IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 13 |
| MICHAEL F. TANNER, | ) | |
| | ) | Bankruptcy No. 12-01429 |
| Debtor. | ) | |

**RULING ON FINAL EVIDENTIARY SHOW CAUSE HEARING**

This matter came on for evidentiary hearing in Cedar Rapids, Iowa.  Derek
Hong appeared for Debtor Michael Tanner ("Debtor").  Ben Hopkins appeared for
Nationstar Mortgage, LLC ("Nationstar").  The Court received evidence and heard
arguments.  The parties submitted post-hearing briefs.  This is a core proceeding
under 11 U.S.C. § 157(b)(2).

**STATEMENT OF THE CASE**

Nationstar is Debtor's mortgage lender.  After a long history of dispute
about Debtor's mortgage, Debtor and Nationstar entered into a consent order that
they thought would resolve all disputed issues.  Under that order, Debtor agreed to
pay his post-position arrearage in exchange for documentation about the loan's
history and status.  Debtor now argues that Nationstar knowingly failed to comply
with the order.  Debtor requests compensatory and punitive damages and
attorney's fees as sanctions.  Nationstar argues that it did comply and that its
additional financial concessions sufficiently compensated Debtor for its delay.  The
Court awards sanctions, but in an amount significantly less than Debtor requests.

## BACKGROUND AND FINDINGS OF FACT

Debtor filed his Chapter 13 bankruptcy petition on July 27, 2012. The Court confirmed Debtor's Chapter 13 plan on November 20, 2012. Debtor's plan provided, among other things, that Debtor would make ongoing post-petition mortgage payments of $1,286.00 outside the plan, directly to Nationstar.

On January 31, 2013, Debtor filed an Objection to Nationstar's proof of claim. It listed the installment payment amount as $912.76 along with a number of additional items. Debtor objected to almost everything in Nationstar's proof of claim, except the monthly payment amount of $912.76.

The Court held an evidentiary hearing on the objection. The Court issued a ruling holding that the confirmation order probably bound Nationstar, but granted Debtor's objection to the claim nevertheless. In re Tanner, Bankr. No. 12-01429, 2013 WL 2318848, at *6 (Bankr. N.D. Iowa May 28, 2013). The Court found, "None of the testimony or documents in the record sufficiently substantiates the amounts set out in the Proof of Claim." Id. The Court ordered, "Nationstar's allowed claim is $3,791.00 as an arrearage claim and $109,218.00 as a secured claim." Id. The Court did not make any finding about the proper monthly payment amount.

Debtor received a discharge on September 18, 2013. On September 20, 2013, the Chapter 13 Trustee, Carol Dunbar, filed her Notice of Final Cure

Payment.  She stated that Debtor had paid the $3,791.00 prepetition arrearage claim.  Nationstar filed a response.  It agreed that Debtor had paid the prepetition arrearage claim, but stated that Debtor was "post petition due for 3/01/13 thru 10/01/13 with payments each in the amount of $1,247.58 for a total of $9,980.64."

On December 19, 2013, Debtor filed a motion to amend his plan, under which he had already completed plan payments, in response to Nationstar. Debtor's modified plan set out $912.76—the amount he had been paying during his plan—as the monthly payment that he was to make to Nationstar during the plan.  Debtor argued that his proper payment amount was $912.76 because that was the amount in Nationstar's proof of claim.

Nationstar objected to Debtor's motion to amend.  It first argued that § 1329(a) barred Debtor from modifying his plan.[1]  It further argued that the proof of claim and supporting documents show that Debtor's proper monthly payment amount should have been $1,255.98, not $912.76.  Nationstar argued that this $1,255.98 amount includes a principle and interest component of $912.76 **and** an escrow payment of $343.22.  Nationstar argued that, because Debtor had been making only the $912.76 principle and interest payment—not the $343.22 escrow payment—he was now delinquent on his post-petition payments.

---

[1] That section states that a plan may be modified "at any time after confirmation of the plan but before the completion of payments under such plan."  11 U.S.C. § 1329(a).

3

One of the important and undisputed facts here is that, from February 2013 to April 2014, Debtor sent a letter to Nationstar with every monthly payment. Each letter asked for a payment schedule, notification if payments are due, and receipts for payments he had made. In every letter, Debtor noted that Nationstar had not responded to the requests he had made in previous letters. Debtor reiterated those requests each month. Nationstar cashed all the checks but never sent Debtor the requested information. It never informed him that his monthly payments were short $334.82 or that there was a shortfall in the escrow funds.

This all culminated in the filing of Debtor's motion to amend and Nationstar's objection. After those filings, the Court granted multiple continuances at the parties' requests as they attempted to reach a settlement. On November 6, 2015, the parties informed the Court that they had reached a settlement. They submitted a proposed Consent Order on Motion to Amend Plan, which the Court entered on December 1, 2015 ("the Settlement Order").

The Settlement Order provided, among other things, that Debtor would pay $7,207.62 to cure any post-petition mortgage arrearage. In exchange, the Order required Nationstar to provide Debtor with a statement showing how the funds were applied, the new principle balance, the new contractual due date, and an amortization schedule. Nationstar was to provide all of this within 30 days of the order. The order gave Debtor 21 days after that to approve or reject the statement

4

that Nationstar provided.  Both parties intended the Settlement Order to resolve the

entire dispute.  Nationstar would get the arrearage payment it thought it was owed

and Debtor would get loan documentation and assurance about his current loan

status.

Although Debtor agreed to pay $7,207.62 to cover the post-petition

arrearage, Debtor did not actually think he owed this amount to Nationstar.  Debtor

believed the $912.76 monthly payments had been sufficient to pay Nationstar the

full amount in its proof of claim.  Debtor nevertheless agreed to pay $7,207.62 in

order to get Nationstar to provide him clear information about the status of his

loan.  Debtor wanted certainty about his loan status, to resolve all disputes with

Nationstar, to sell his home, and to move on with his life.  Unfortunately, the

Settlement Order did not provide him with the certainty he sought.

Nationstar did not provide the required documentation to Debtor within the

30-day deadline.  On January 15, 2016 (16 days after the Settlement Order's

deadline), Nationstar's counsel informed Debtor's counsel that Nationstar was still

adjusting the loan and it was "taking longer than expected."  Nationstar eventually

agreed to waive the $7,207.62 payment due from Debtor under the Settlement

Order "in exchange for additional time to complete the loan adjustment."  On

January 19, 2016, Debtor agreed to "give Nationstar more time to adjust the loan in

exchange for Debtor keeping the lump sum payment for the arrearage."

5

The amortization schedule that Nationstar later provided to Debtor does not show that Nationstar actually waived the delinquency.  Instead, it appears to show that Nationstar simply added additional payments to the back end of the loan.  In essence, Nationstar did not waive the $7,207.62 payment, but simply deferred it to later in the loan payment schedule.  This was not the agreement they had reached.

On February 24, 2016, Debtor's counsel told Nationstar's counsel that Nationstar had informed Debtor that "his loan modification was approved." Debtor's counsel asked if this modification was how Nationstar was going to adjust the loan.  Nationstar's counsel replied that he was guessing that that was the case but was not sure.

On March 3, 2016, Debtor's counsel asked how much more time Nationstar needed to get the paperwork in order.  On March 15, 2016, Debtor's counsel asked for another update.  That same day, Nationstar's counsel replied that he would "get a hold of them today and get back to you either today or tomorrow to see where they are.  I assure you I am on on top of it.  I want the case over as well."  Later that day, Nationstar's counsel informed Debtor's counsel that for some reason Nationstar had stopped working on the loan modification discussed in the February 24 emails.

On March 24, 2016, Debtor's counsel asked for an explanation and update. The same day, Nationstar's counsel stated that Nationstar "dodged that question

6

when I asked but I will find out to make sure it is very soon." Later that day,

Debtor's counsel informed Nationstar's counsel that if Nationstar did not provide a

timeline for finishing the process by the end of the following week, he would

request a status conference on the Settlement Order.

Nationstar failed to provide that timeline. On April 27, 2016, Debtor filed a

request for status conference. The Court scheduled the status conference for June

22, 2016. On May 26, 2016, Nationstar's counsel reported that Nationstar "says

[the loan adjustment documentation] will be done before the end of the month.

Hopefully it is done by then." On June 13, 2016, Debtor's counsel asked

Nationstar's counsel for any news on the loan documents. On June 21, 2016,

Nationstar's counsel replied that Nationstar "said again today they intend to honor

the terms of what we agreed to."

On June 22, 2016, the Court held a status conference and ordered, "Creditor

Nationstar Mortgage has 30 days to comply with the Court's Order filed December

1, 2015." The Court's new order further noted, "If Creditor has not complied

within 30 days, the Court will schedule a show cause hearing for Nationstar . . . to

explain . . . why sanctions should not be entered." Nationstar failed to comply with

this order as well.

On July 26, 2016, five days after the new Court-imposed deadline had

passed, Debtor's counsel told Nationstar's counsel that "the 30 days [were] up on

7

Friday. We haven't received anything. Can you provide us with the documentation today? If not, we will request the court schedule a show cause hearing." That same day, Nationstar's counsel replied "just to double check you wanted the amortization schedule, something showing the loan is current, a payment history, and a payoff right? No news on when the documentation will be there. They just asked me to double check what you wanted."

This evidence alone shows serious disregard for this Court's orders. These matters had been pending for some time and after months of requests from Debtor—and after the second Court-ordered deadline passed—Nationstar sought clarification about what it was supposed to provide under the Settlement Order—and never complied.

But the problems did not end there. The next day, July 27, 2016, Debtor's counsel answered Nationstar's question about what documents the Settlement Order required Nationstar to provide. Debtor also filed a request for show cause hearing. The Court scheduled a show cause hearing for August 23, 2016.

On August 22, 2016, the day before the show cause hearing, Nationstar retained new counsel. On August 23, the Court held the scheduled hearing. Nationstar's new counsel noted that he was unfamiliar with the case and requested a continuance. The Court continued the hearing until September 13, 2016 to give Nationstar's new counsel a chance to familiarize himself with the case.

8

There is no evidence in the record about the motivation behind Nationstar's change of counsel.  The Court makes no findings about the change or the motivation behind it.  What is clear, however, is that the change in counsel the day before the scheduled show cause hearing resulted in further delay caused entirely by Nationstar.

On September 12, 2016, the day before the rescheduled show cause hearing, Nationstar filed what was captioned as Statement Regarding Principal Balance, Due Date and Annual Tax and Interest Statement.  Nationstar intended this document to fulfil its obligation under the Settlement Order.  Attached to the statement were a September 9, 2016 Payoff Statement, a 2015 IRS 1098 form, and an August 11, 2016 mortgage statement.  Nationstar provided this documentation purporting to comply with the Court's Orders 52 days after the July 22 deadline— the second deadline to provide such documents.

At the September 13, 2016 show cause hearing, Debtor's counsel noted that he had just received the documents.  He further noted that even a passing review showed that the documents clearly had errors and did not comply with the Court's order.  Nationstar's counsel was unsure what errors Debtor referred to and exactly how the documents failed to comply.  The Court gave Debtor 21 days to review the documents for compliance with the Court's Order, to communicate with Nationstar, and to inform the Court if further hearing was necessary.

9

Within those 21 days, Debtor sent Nationstar a letter raising 12 concerns with the documentation that Nationstar provided.  The letter noted readily apparent discrepancies in the numbers Nationstar provided, and asked for clarification on how Nationstar calculated certain numbers, among other things.

On October 18, 2016 Debtor's counsel asked Nationstar's counsel if he knew "when we might [hear] back on our issues.  Debtor has some well justified concerns that it may be a long time before we hear back.  Did you give Nationstar any kind of a deadline?"  On October 19, Nationstar's counsel replied that he will "follow up with them. I expect to have something for you by the end of the week and will stay in touch."  On October 21, Nationstar's counsel sent an email (letter) saying that his "contact is reviewing the questions with her manager."  Nationstar's counsel requested a conference call with his client "to help ensure the process keeps moving."

On November 1, 2016, Nationstar replied to Debtor's letter.  While that letter clarified some issues, Nationstar noted that it was still working on providing other answers or making necessary changes.  In the letter Nationstar's counsel says that he "expect[ed] to have follow up responses to you shortly."

On November 23, 2016, Debtor filed a motion for a show cause hearing. That motion stated, "Although the attorney for Nationstar has stated that new information would be forthcoming, as of this date, nothing has been received."

The motion further noted, "Almost a full year has passed since the December 1, 2015 Order without resolution by Nationstar."

On December 2, 2016, Nationstar filed a reply.  Nationstar argued that it had complied with the Court's order by providing documentation.  Nationstar argued that the parties' agreement modified the timeframe and that, under that agreement, Nationstar was considering the loan current up to September 2016, when it provided the documentation.  Nationstar also argued that Debtor's response to the documentation was not a rejection, but instead simply more questions.  Nationstar further argued that the most important and relevant issues addressed by the original Settlement Order—the post-petition arrearage and delinquency status of the loan— had been resolved when Nationstar agreed to waive the entire $7,207.62 post-petition delinquency identified in the Settlement Order.  Nationstar argued that there was no longer a basis for holding a show cause hearing.

On March 7, 2017, the Court held the show cause hearing.  At that hearing, Debtor argued that Nationstar's entire course of conduct, including conduct occurring before the Settlement Order, warranted sanctions.  Nationstar objected to the evidence of its conduct before the Settlement Order.  Nationstar argued that that conduct was not relevant to whether it complied with the Settlement Order. The Court took the evidence subject to the objection.  The Court now overrules the objection.  Debtor seeks redress for Nationstar's extraordinary delays, poor

11

communication, and contradictory information it provided to perform under the

Settlement Order.  Conduct predating the Settlement Order is relevant to show the

entire pattern of such delay, poor communication, and contradictory information.

It also shows the settlement's importance to Debtor—ending the prolonged dispute

and giving him certainty about the status of his mortgage.  It further puts in context

Debtor's claims of personal frustration and extraordinary stress because of

Nationstar's delays and complete lack of care about his situation.  As a result,

Nationstar's pre-Settlement Order conduct is relevant to the Court's decision about

the appropriate amount of sanctions in this case.

The Court finds that Nationstar failed to comply with the Settlement Order

that the Court entered in December 2015.  The Court further finds that Nationstar

has not shown cause for the failure to follow the Court's order—and the length of

time this failure continued.

Nationstar's violation of the Court's Settlement Order caused harm to

Debtor.  Debtor established a long history of delay, poor communication, and

inconsistent answers from Nationstar.  Unfortunately, it became a pervasive pattern

of conduct by Nationstar.  Nationstar's failure to abide by the Court's orders

caused continuing stress to Debtor.  Debtor repeatedly hoped and even had reason

to believe that the matter was over or almost over.  He was repeatedly disappointed

and faced more uncertainty and delay.  He spent a great deal of his personal time

talking to his attorney and working on documentation.  In particular, Debtor spent time repeatedly reviewing his mortgage documents in an attempt to point out Nationstar's errors and its continuing and unnecessary delays.  Debtor has attempted to keep clear records of, and an accounting for, his mortgage payments. He has been unable to do so, however, because of lack of communication or cooperation from Nationstar.  Debtor points out that he did not even receive an escrow analysis until the month before the show cause hearing.

This dispute and the accompanying delay has had a detrimental effect on Debtor's financial and personal life.  Debtor paid too much tax in 2014 because he could not claim his full mortgage interest deduction.  This cost him $500–$1000. He had similar tax preparation costs and loss of potential return in 2015 and 2016. These costs total $2000.  Debtor also had substantial unnecessary attorney expenses.  Debtor met with his attorney about once a month during the course of this long dispute.  In addition, Debtor spoke with his attorney two or three times per week to get updates or respond to the latest problems.  Debtor testified that he thought all this work added up to about 100 hours, which would total fees of $29,000 at his attorney's rate.

Nationstar's failure to follow the Court's orders and additional delay also had a detrimental effect on Debtor's personal life.  It disrupted Debtor's ability to move on with his life.  Debtor has long wanted to sell his house and move to

13

Florida.  He has been unable to do so because of Nationstar's delay.  Debtor is

justifiably concerned that he may not get a fair price for his home while he remains

in bankruptcy pending resolution of his dispute with Nationstar.  Debtor also notes

that he would have great difficulty closing a sale without an accurate payoff

amount from Nationstar.

Genes Mays testified for Nationstar.  Mays works for Nationstar as a

Litigation Research Analyst.  Mays showed that there was an escrow shortage and

post-petition delinquency on Debtor's account.  He believes that Nationstar's proof

of claim includes the escrow component.  He noted that, even if there were an

escrow surplus when Nationstar filed the proof of claim, Nationstar would have

required Debtor to make monthly escrow payments during the plan.  Nationstar

continued to make those charges to Debtor.

Mays also testified that as long as Debtor made payments sufficient to cover

principle and interest, Nationstar would not return the checks.  Thus, Mays noted

that Nationstar accepted the $912.76 payments but the account still showed a

balance due because of the escrow shortages.  Mays further noted that Nationstar

would hold amounts in suspense until there was enough money to satisfy a full

payment.  Mays said that Nationstar probably did not respond to Debtor's letters

and concerns because its policy at the time was to not respond or send anything to

14

debtors while they were still in bankruptcy.  Mays testified that that policy has since changed.

Mays also explained why Nationstar identified so many different monthly payment amounts over the life of the loan.  He explained that Nationstar reanalyzes escrow payments every year.  Thus, depending on the insurance and taxes assessed the previous year, and the previous year's escrow balance, the escrow payment going forward will change.  Mays said that this is why Debtor saw a number of different monthly payment amounts.  Mays said that those different numbers reflected the attempted accuracy Nationstar sought in dealing with escrow changes.

Finally, Mays testified that, in this particular case, as settlement talks progressed, Nationstar was confronted with moving parts.  He said answering Debtor's questions was difficult and particularly so in providing timely and accurate answers.  He did not fully explain why this was so.

## CONCLUSIONS OF LAW AND ANALYSIS

### I.    Issues Before the Court

Debtor brought these matters before the Court under his request for a show cause hearing regarding Nationstar's failure to follow this Court's December 1, 2015 (and related June 22, 2016) orders.  The Court held the evidentiary hearing in March 2017.  As noted, Debtor presented a great deal of evidence about his

dealings with Nationstar during the life of the loan, not just its conduct after the Court entered the orders, which the Court has now found relevant.

Debtor asks the Court to use that evidence in deciding on sanctions and for other relief.  In particular, Debtor asks the Court to determine that he was never delinquent because the proper payment amount was $912.76, not $1,255.98. Debtor argues that, under Federal Rule of Bankruptcy Procedure 3001(f) and 11 U.S.C. § 502, Nationstar's proof of claim (which he argues shows a payment amount of $912.76), controls the monthly payment amount.  Debtor argues that, even if there was an escrow component he needed to pay, he had an escrow surplus of over $6,000, which should have covered any escrow nonpayment.  Debtor also asks the Court to confirm his Second Modified Plan, deny Nationstar's response to final cure (stating that his monthly payment is $1,247.58 and that his post-petition payments are delinquent $9,980.64), and find that Debtor is current on his mortgage and escrow payments.  Debtor also requests heavy monetary sanctions.

Nationstar argues that Debtor is improperly attempting to revisit the issue of his post-petition arrearage and monthly payment amounts.  Nationstar argues that the Settlement Order entered December 2015 resolved this issue when Debtor agreed to pay $7,207.62 to Nationstar to cover his post-petition arrearage. Nationstar argues that its proof of claim properly listed the escrow amount as a part of Debtor's monthly payment.  Nationstar also argues that § 1329(a) bars Debtor

16

from modifying his plan to retroactively change the plan payments because Debtor has completed plan payments. Nationstar further argues that allowing Debtor to modify his plan would violate § 1322(b)(2) because it would modify a claim secured only by real property that is Debtor's principal residence. Nationstar concludes that the Court should deny Debtor's Motion to Amend Plan and consider only the question of whether there should be sanctions—and if so, how much.

The Court agrees with Nationstar that the Settlement Order resolved the existence and amount of Debtor's post-petition arrearage. Debtor is attempting to revisit the Settlement Order, which the Court is enforcing in this proceeding. The Court will address Debtor's request for sanctions based on Nationstar's failure to comply with the Settlement Order. The Court will not revisit the amount or existence of Debtor's post-petition delinquency.

## II.   Sanctions

Debtor seeks sanctions for Nationstar's failure to follow this Court's December 1, 2015 and June 22, 2016 orders. Debtor testified that Nationstar's delay in complying with the Court's orders caused him financial and personal harm. He argues that this whole situation caused him great stress, kept him from being able to move on with his life, and cost him a significant amount in attorney fees and tax costs. Debtor asks for damages for these costs resulting from Nationstar's failure to abide by the Court's order. Debtor asks for $131,000 to

17

compensate him for all of the damage resulting from Nationstar's failure to follow the Court's orders. Debtor also requests $262,000 in punitive damages, or double the compensatory damages he requests.

Debtor also remains unsatisfied with the documentation that Nationstar provided. Debtor testified that this documentation is the most important part of his case. Debtor asks for sanctions of $1,000 per day that Nationstar does not comply with an order to provide such documentation.

Nationstar argues that sanctions are inappropriate. Nationstar argues that it resolved the dispute at the heart of this matter—the amount of Debtor's post-petition delinquency—when it agreed waived the $7,207.62 post-petition delinquency that Debtor agreed to pay under the Settlement Order. Nationstar believes that this waiver, along with its additional agreement to treat the loan as current until it provided the requested documentation, compensated the Debtor for its failure to timely comply and should be enough to prevent the Court from ordering additional sanctions to compensate Debtor.

"It is well-settled that the purpose of a civil contempt sanction is either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." In re Gravel, 556 B.R. 561, 574 (Bankr. D. Vt. 2016) (internal quotation marks omitted). "In contrast to civil contempt sanctions, which are

18

appropriate only for coercive and compensatory purposes, sanctions may be imposed pursuant to a court's inherent authority to punish and/or deter offending conduct.  As federal courts, bankruptcy courts possess inherent authority to impose sanctions specifically for violations of court orders." Id. at 574–75 (footnote omitted) (collecting cases).

Where there is a violation of the court's order, compensatory damages may be appropriate. In re Wright, 461 B.R. 757, 762 (Bankr. N.D. Iowa 2011).  In particular, this Court has awarded damages to compensate debtors for "time spent and the stress and frustration" resulting from a mortgage lender's failure to abide by the Court's order. Id.  In that case, the Court awarded debtors $10,000 in actual damages, where they spent a total of 30 hours "contacting attorneys, time away from work and the use of work time to receive faxes in order to learn what was going on with his mortgage" and "tracking down payments, making calls, sending emails, preparing records of payments and payment histories." Id. at 761.  The Court also awarded attorney's fees. Id. at 762.  The Court awarded punitive damages of $40,000 because mortgage lender's violation of its order was "willful" and "indefensible." Id.  As further sanctions, the Court prohibited the mortgage lender from making any changes without specific Court approval. Id.

19

Debtor seeks both actual and punitive damages here—like those awarded in

Wright.  Debtor, however, seeks a substantially larger award.  Nationstar argues

that no sanctions are appropriate.

### A. Actual Damages

Nationstar violated this Court's orders by not providing the documentation

within the time required in the Settlement Order—and continued to violate the

order for many more months.  Nationstar argues that it bargained for additional

time to comply with the order by voluntarily waiving the $7,207.62 post-petition

arrearage payment required from Debtor under the Settlement Order.  It notes that

it agreed to forgo any subsequent payments until it produced the documentation—

which Nationstar claims it did in September 2016.

The Court disagrees.  At most, and giving Nationstar every benefit of the

doubt, this agreement to waive payments bought Nationstar until July 22, 2016—

30 days from the June 22, 2016 order that gave Nationstar 30 days more to comply

with the Settlement Order.  Nationstar failed to comply with the June 22, 2016

order.  Nationstar was still in violation of that order for at least 52 more days.

More fundamentally, Nationstar does not appear to have actually complied

with its commitment to waive the arrearage payment of $7,207.62—or other

payments while the documentation was prepared.  Nationstar instead apparently

just moved all these "waived" payments onto the back end of the loan.  The Court

20

specifically finds that this was not the parties' agreement in dealing with delays

related to the December 2015 Order.  The Court finds that the parties' agreement to

waive the $7,207.62 should be enforced.  The Court will order Nationstar to pay

Debtor $7,207.62.

Debtor has also suffered unnecessary uncertainty about the status of his

mortgage because of Nationstar's delay in complying with the Court's orders.  This

delay has stalled Debtor's ability to sell his home, make plans, and move on with

his life.  He also incurred a great amount of legal expense.  These damages are

outlined above.  The Court finds that Debtor's actual damages due to Nationstar's

delay in complying with the Court's orders are as follows: $10,000 for the

inordinate amount of time Debtor spent dealing with Nationstar's delay and the

related mental and emotional anguish; $7,207.62 for the waived payments; and

$2,000 in damage from tax costs and preparation expenses.  Thus, the

compensatory sanctions award totals $19,207.62.  The Court will also award

attorney's fees.

## B. Punitive Damages

Nationstar's delay in following the Court's orders show disregard for this

Court's orders and the judicial process.  Communications between Nationstar's

representatives and Debtor's representatives evidence such disregard.  After

Nationstar blatantly violated the Court's clear June 22, 2016 order (which

21

effectively gave Nationstar a second deadline to comply with the Settlement

Order), Nationstar waited for the deadline to pass, and then—after a reminder from

Debtor's counsel about the deadline—asked for clarification about what

documentation it was supposed to provide.  This and other actions and statements

from Nationstar show that Nationstar did not make complying with the Court's

orders a priority in any way.  This casual attitude toward, not a willful disregard of,

the Court's orders is indefensible and will not be tolerated.  To the extent that this

attitude reflects Nationstar's current policies and procedures, things need to

change.  As a result, the Court awards punitive damages of $40,000—or just over

double the compensatory award.

The Court further notes that Nationstar specifically promised responses to

Debtor's request for clarifications in its November 1, 2016 letter.  If Nationstar has

not yet provided such clarifications, the Court orders it to do so within 10 days of

this order, or face potential additional sanctions.  As the Settlement Order states,

when Debtor reviews and approves these statements (and now clarifications) from

Nationstar, Debtor will withdraw his amended plan.  When this occurs,

Nationstar's objection to the amended plan will be moot, allowing the case to

close.  If this does not occur, there will be additional show cause proceedings.

## CONCLUSION

**WHEREFORE**, for violating this Court's orders entered December 1, 2015, and June 22, 2016, the Court awards Debtor Michael Tanner actual damages against Nationstar Mortgage, LLC of $19,207.62.

**FURTHER**, the Court awards Debtor Michael Tanner punitive damages against Nationstar Mortgage, LLC of $40,000.

**FURTHER**, the Court awards Debtor Michael Tanner attorney fees against Nationstar Mortgage, LLC.  Debtor's attorney will file a statement of fees within 30 days of this order.

**FURTHER**, the Court orders Nationstar Mortgage, LLC to provide Debtor with the clarifications promised in its response to his letter within 10 days. Nationstar will face additional contempt proceedings if it does not provide the promised responses.

Dated and Entered:  August 23, 2017

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE